UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| SAZERAC BRANDS, LLC | ) | |
| | ) | |
| PLAINTIFF | ) | Civil Action No. _3:25-cv-445-BJB_____ |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE(S) | ) | |
| d/b/a @harlen.davis.wheatley | ) | |
| d/b/a @buffalotracedistillery | ) | |
| | ) | |
| DEFENDANT(S) | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Sazerac Brands, LLC ("Sazerac"), for its Complaint for Injunctive and Other Relief against John Doe(s) ("Defendant"), hereby alleges as follows:

## INTRODUCTION

1. This case concerns Defendant's deliberate efforts to deceive the general public by falsely claiming to be one of Sazerac's most well-known and venerated employees, Master Distiller Harlen Wheatley ("Wheatley"). Sazerac is a world-renowned liquor and distilled spirits manufacturer that has grown to become one of the largest spirits companies in the country. For over a century, Sazerac has marketed and sold a wide variety of alcoholic beverages and distilled spirits under various highly acclaimed and recognizable brands.

2. Unlawfully trading on Sazerac's goodwill, Defendant is operating multiple social media profiles in which he purports to be Wheatley himself. Through this longstanding grift, Defendant falsely offers the public access to unique Sazerac products and experiences, including the opportunity to purchase exclusive, high-end bourbons.

3.      Defendant has no affiliation with Sazerac.  He has no right to sell, market, or otherwise promote Sazerac products or experiences.  And despite multiple demands to cease-and-desist via correspondence sent to Defendant's Social Media Accounts (as defined below), Defendant's fraud continues.

4.      Accordingly, Sazerac brings this lawsuit to protect the integrity of its products, its valuable intellectual property rights, and its hard-won goodwill.

## PARTIES, JURISDICTION AND VENUE

5.      Sazerac is a Delaware limited liability company with a principal place of business at 10101 Linn Station Road, Suite 400, Louisville, Kentucky 40223.

6.      Defendant is a currently unknown individual (or individuals) purporting to be "Harlen Davis Wheatley" through the Facebook pseudonyms "@harlen.davis.wheatley" and "@buffalo.trace.distillery.302723" (referred to collectively as the "Social Media Accounts"). According to the Social Media Accounts, Defendant is a resident of Kentucky. Sazerac will amend this complaint to allege the true name(s), address, and other requisite information once ascertained.

7.      This Court has jurisdiction over the claims asserted in this action for monetary and equitable relief under federal question jurisdiction, 28 U.S.C. § 1331, and federal supplemental jurisdiction, 28 U.S.C. § 1367.

8.      This Court has specific personal jurisdiction over Defendant because Defendant purports to transact business in the Western District of Kentucky and further interacts with Kentucky residents located in the Western District of Kentucky through the Social Media Accounts.

9.      Venue is proper in this Court under 28 U.S.C. § 1391, as it is the judicial district in which all or a substantial part of the events and omissions giving rise to Sazerac's claims occurred

and continue to occur, and because Defendant has transacted business and caused injury in this Commonwealth, specifically in Jefferson County.

## **BACKGROUND**

10.     Upon information and belief, Defendant is currently the owner and operator of the Social Media Accounts, *i.e.*, "@harlen.davis.wheatley" and "@buffalo.trace.distillery.302723".

11.     Through the Social Media Accounts, Defendant purports to be Harlen Wheatley, the legendary Master Distiller for the Buffalo Trace Distillery.

12.     Buffalo Trace is owned by Sazerac and is among the world's most notable distilleries, winning more awards than any other distillery in the world, including seven "Distillery of the Year" titles.

13.     Sazerac uses the "Buffalo Trace" trademark in connection with distillery services, alcoholic beverage products, and related merchandise.

14.     The real Harlen Wheatley ("Wheatley") is a Buffalo Trace employee.

15.     Wheatley joined Buffalo Trace in the 1990s and is the distillery's Master Distiller, responsible for overseeing distilling and aging operations.

16.     Throughout his career, Wheatley has won numerous awards.  For example, he is a four-time James Beard Award nominee in the "Outstanding Wine and Spirits Professional" category.

17.     Well aware of the goodwill and extensive demand for products involving Buffalo Trace and Wheatley, Defendant is deliberately impersonating Wheatley on Facebook by using his name, persona, professional credibility, and association with Buffalo Trace and Sazerac to create a false sense of authenticity and credibility, which he uses to dupe prospective customers.

18.    Initially, Defendant featured actual pictures of Wheatley.  But following a cease-and-desist letter sent to the Social Media Accounts, and the transition to the Facebook pseudonyms at issue here—@buffalo.trace.distillery.302723 and @harlen.davis.wheatley—the Social Media Accounts now feature photographs of a local Louisville-based attorney, Brian Haara:



19.    Mr. Haara does not operate the Social Media Accounts, nor did Defendant obtain Mr. Haara's consent to use his image and likeness to promote the Social Media Accounts.

20.    Upon information and belief, through the Social Media Accounts, Defendant has obtained and is selling a conglomeration of counterfeit, stolen, and otherwise unauthorized bourbon whiskey bearing Sazerac's trademarks:



21.     Sazerac holds legal title to all authentic Sazerac-branded goods, and, at all relevant times it has had the exclusive right to control the possession, marketing, and sale of such goods.

22.     For instance, Sazerac and its predecessors-in-interest and partners have produced, marketed, and distributed bourbon whiskey under the VAN WINKLE brand, including the VAN WINKLE Products depicted above ("VAN WINKLE Products"), since at least as early as 1991.

23.     Sazerac markets, distributes, and sells VAN WINKLE Products throughout the United States.

24.     Sazerac promotes the VAN WINKLE Products online, including through its company website at https://www.sazerac.com/our-brands/sazerac-brands/old-rip-van-winkle-kentucky-bourbon.html and its Buffalo Trace Distillery website at https://www.buffalotracedistillery.com/our-brands/van-winkle/van-winkle-special-reserve-12-year.html. The VAN WINKLE Products are also promoted at https://oldripvanwinkle.com/.

5

25.     Sazerac also promotes The VAN WINKLE Products through its social media accounts, including Facebook, Instagram, and X (accounts that have thousands of followers).

26.     Sazerac sells and distributes bourbon whiskey under the VAN WINKLE Mark throughout the United States wherever alcoholic beverages are typically sold.  This includes off-premises sales at liquor stores, grocery stores, and other retail outlets, as well as on-premises sales at bars, restaurants, and other locations where individual alcoholic drinks are sold and consumed.

27.     Many of Sazerac's off-premises and on-premises accounts extensively market, promote, and advertise the VAN WINKLE Products on their own websites and brick-and-motor locations.

28.     Sazerac's VAN WINKLE Products have received critical and industry recognition, including 41 awards since 2009.  Among these are awards are those issued by the San Francisco World Spirits Competition, New York International Spirits Competition, and World Whiskies Awards – Whiskey Magazine. Sazerac lists these and dozens of other awards on its company website.

29.     Because of the VAN WINKLE Products' extreme success and reputation for high quality in the alcoholic beverage marketplace, the VAN WINKLE Mark is distinctive, well known, highly regarded, and recognized by consumers as identifying Sazerac's VAN WINKLE Products and the source thereof.

30.     Sazerac is the exclusive licensee of the VAN WINKLE Mark, with exclusive rights to advertise, promote, and sell the VAN WINKLE Products throughout the United States.

31.     Defendant is not now, nor has he ever been, affiliated with Sazerac, nor is he authorized to sell, distribute, or otherwise market Sazerac-branded products, including the VAN WINKLE Products, or use the VAN WINKLE Mark.

32.     Defendant's actions are deliberately calculated to confuse Sazerac's customers, deceive the general public into believing that Defendant is affiliated with Sazerac, and to divert business away from Sazerac by passing off counterfeit or otherwise unauthorized goods as genuine Sazerac products.

33.     Indeed, various unrelated Facebook pages have already indicated that the Social Media Accounts are fraudulent:



34.     On mutltiple occasions, Sazerac has provided notice via the Social Media Accounts to Defendant of the Social Media Accounts' unauthorized actions and demanded that Defendant immediately cease-and-desist.  Defendant has ignored Sazerac's repeated demands.

35.     Worse, upon information and belief, Defendant has engaged in further subterfuge by blocking accounts meant to monitor his activity and by operating the Social Media Accounts privately to avoid detection.

36.     Defendant's continued and unauthorized marketing, sale, and distribution of Sazerac's products and further false impersonation of Wheatley have caused, and will continue to cause, confusion in the marketplace, irreparable injury, and material harm to Sazerac's goodwill and reputation throughout the market.

## CAUSES OF ACTION

### COUNT I
UNJUST ENRICHMENT

37.     Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

38.     By purporting to be Wheatley, Buffalo Trace's Master Distiller, when he is not, Defendant is using the Social Media Accounts to fraudulently promote and sell Sazerac-related products, including high-end bourbon products such as the VAN WINKLE Products.

39.     Defendant is receiving unearned and unauthorized benefits by purporting to be Wheatley.  Indeed, Defendant's scheme necessarily relies on duping the public into believing that the Social Media Accounts are actually affiliated with Sazerac by virtue of Wheatley's position as Buffalo Trace's Master Distiller.

40.     Defendant knows that he is not Wheatley and that he has no affiliation—formal or otherwise—with Sazerac.

8

41.     Defendant also knows he is not authorized to sell, market, or distribute the VAN WINKLE Products.

42.     Any benefits the Social Media Accounts have obtained are reserved for Sazerac and Wheatley by virtue of his position as Buffalo Trace's Master Distiller.  It is inequitable for Defendant to retain any benefits earned through the Social Media Accounts.

43.     As a direct and proximate cause of Defendant's wrongful conduct, Sazerac has suffered damages in an amount in excess of the Court's jurisdictional threshold to be determined at trial.

## COUNT II
### 15 U.S.C. § 1125(a): FALSE ADVERTISING

44.     Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

45.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in relevant part:

(a)(1). Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A)  likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act

46.     Through the Social Media Accounts, Defendant is falsely representing himself to be Wheatley, an authorized representative of Sazerac.  Under this guise, Defendant is also purporting to sell Sazerac-branded products, such as the VAN WINKLE Products, and further

offering Sazerac-related experiences (such as distillery tours and other insider information), which he has no right to distribute, sell, or market.

47.     Defendant's conduct is directly and materially affecting interstate commerce, and it has caused demonstrable market confusion, as evidenced by multiple complaints from Facebook users.

48.     By trading on Sazerac-owned brands, products, and by utilizing Wheatley's name in the context of his position as Buffalo Trace's Master Distiller, Defendant has directly caused material harm to Sazerac's goodwill and reputation throughout the market.

49.     As a direct and proximate cause of Defendant's wrongful conduct, Sazerac has suffered damages in an amount in excess of the Court's jurisdictional threshold to be determined at trial.

<u>**COUNT III**</u>
VIOLATION OF KRS 365.110: UNAUTHORIZED USE OF MANUFACTURER'S BRAND OR NAME

50.     Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

51.     KRS 365.110 provides that "[n]o dealer or merchant shall make or apply or cause to be made or applied to any parcel or package any kind or character of label bearing the brand or name of any manufacturer without the written authority of the manufacturer."

52.     Sazerac makes its claim under KRS 365.110, a penal statute, pursuant to KRS 446.070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *See Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005) ("The statute [KRS 446.070] creates a private right of action in a person damaged by another person's

10

violation of any statute that is penal in nature and provides no civil remedy, if the person damaged is within the class of persons the statute intended to be protected.")

53.     Defendant has no right to sell, market, or otherwise claim any affiliation with Sazerac or any of its products, such as the VAN WINKLE Products, let alone to act on Wheatley's behalf.

54.     Despite this, Defendant has routinely attempted to sell, trade, and distribute Sazerac-related products, such as the VAN WINKLE Products, when he has no right to do so.

55.     Sazerac has been directly and materially harmed by Defendant's misconduct through market confusion and loss of goodwill and is among the persons KRS 365.110 is intended to protect.

56.      As a direct and proximate cause of Defendant's conversion, Sazerac has suffered damages in an amount in excess of the Court's jurisdictional threshold to be determined at trial.

<u>**COUNT IV**</u>
UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT

57.     Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

58.     The prominent use by Defendant of the "Sazerac," "Buffalo Trace," "Wheatley" and "VAN WINKLE" names constitutes false designations of origin and false descriptions and representations.

59.     These uses create a likelihood of confusion and cause mistake and deception in consumers' minds as to the affiliation, connection, or associations of Defendant's goods and services with Sazerac and its brands and employees.

60.     These actions constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

11

61.    The continued use by Defendant of the aforementioned names have caused, and will continue to cause, irreparable harm and injury to Sazerac and Sazerac's reputation and goodwill, for which Sazerac has no adequate remedy at law.

**COUNT V**
UNFAIR COMPETITION – KENTUCKY COMMON LAW

62.    Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

63.    The prominent use by Defendant of the "Sazerac," "Buffalo Trace," "Wheatley" and "VAN WINKLE" names constitutes false designations of origin and false descriptions and representations.

64.    These uses create a likelihood of confusion and cause mistake and deception in consumers' minds as to the affiliation, connection, or associations of Defendant's goods and services with Sazerac and its brands and employees.

65.    These actions constitute unfair competition under the common law of Kentucky.

66.    The continued use by Defendant of the aforementioned names have caused, and will continue to cause, irreparable harm and injury to Sazerac and Sazerac's reputation and goodwill, for which Sazerac has no adequate remedy at law.

**COUNT VI**
UNLAWFUL STORAGE, SALE, PURCHASE, AND TRANSPORT OF ALCOHOLIC
BEVERAGES WITHOUT A LICENSE – KRS 243.020(1)

67.    Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

68.    Kentucky, like many states, employs a three-tier system of alcohol distribution. *See, e.g.*, *Tannins of Indianapolis, LLC v. Cameron*, 2021 U.S. Dist. LEXIS 246548, at *9 n.4 (W.D. Ky. Dec. 28, 2021); KRS 243.130(8).  "Under a three-tier system of alcohol distribution,

producers are required to sell their products to in-state wholesalers, who sell to in-state retailers, who in turn sell to consumers." *Cameron*, 2021 U.S. Dist. LEXIS 246548, at *9 n.4.

69.     KRS 243.020(1) prohibits anyone from manufacturing, storing, selling, purchasing, or transporting alcoholic beverages without the requisite license.

70.     Pursuant to KRS 243.990(2), "[a]ny person who, by himself or herself or through another, directly or indirectly, violates subsection (1) of KRS 243.020 shall, for the first offense, be guilty of a Class B misdemeanor; for the second offense, he or she shall be guilty of a Class A misdemeanor; and for the third and each subsequent offense, he or she shall be guilty of a Class D felony."

71.     Sazerac makes its claim against Defendant under KRS 243.020(1) pursuant to KRS 446.070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *See Hargis*, 168 S.W.3d at 40.

72.     Defendant has no license to manufacture, store, sell, purchase, or transport any of Sazerac's products, such as the VAN WINKLE Products.

73.     Despite this, Defendant has, upon information and belief, routinely attempted to store, sell, purchase, and transport Sazerac-related products, such as the VAN WINKLE Products, when he has no license to do so.

74.     Sazerac has been directly and materially harmed by Defendant's misconduct through market confusion and loss of goodwill and is among the persons KRS 243.020(1) is intended to protect.

75.      As a direct and proximate cause of Defendant's conversion, Sazerac has suffered damages in an amount in excess of the Court's jurisdictional threshold to be determined at trial.

**COUNT VII**
INJUNCTIVE RELIEF

76.     Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

77.     Sazerac has demonstrated a strong likelihood of success on the merits of its claims against Defendant by submitting evidence that Defendant has, and continues to, wrongfully sell, market, distribute, and otherwise promote Sazerac products and experiences by, among other things, the Social Media Accounts, when Defendant has no legal right to do so.

78.     Unless restrained and enjoined, Defendant's continuing wrongful conduct will cause Sazerac to suffer immediate and irreparable injury in the form of, among other things, present economic loss, which is unascertainable at this time, and future economic loss, which is incalculable; loss of, and damage to, customer and distributor and marketer goodwill; irreparable compromise of Sazerac's standing in the market; and loss of goodwill throughout the market.

79.     Sazerac has no adequate remedy at law or otherwise to fully address its injuries, save in a court of equity.

80.     Balancing the equities favors issuing an injunction in Sazerac's favor because the injuries and threatened injuries to it outweigh any harm an injunction poses to Defendant.

81.     The public has a vested interest in ensuring the sanctity of trademarks and property ownership, as well as transparency and honesty in marketing, sales, and distribution of consumer products.  Thus, entering the requested injunction will unquestionably serve the public interest.

**COUNT VIII**
DECLARATORY JUDGMENT

82.     Sazerac re-alleges and incorporates by reference all of the foregoing allegations as if fully set forth herein.

4898-6252-3475\1

83. Sazerac holds legal title to all authentic Sazerac-branded goods, and, at all relevant times, it has had the exclusive right to control the possession, marketing, and sale of such goods.

84. Sazerac is the exclusive licensee of the VAN WINKLE Mark, with exclusive rights to advertise, promote, and sell, among other products, the VAN WINKLE Products throughout the United States.

85. Defendant is not now, nor has he ever been, affiliated with Sazerac, nor is he authorized to sell, distribute, or otherwise market Sazerac-branded products, including but not limited to the VAN WINKLE Products.

86. There is a present, actual controversy between Sazerac and Defendant regarding Defendant's continued promotion, sale, distribution, and marketing of Sazerac-branded products and experiences in light of the foregoing allegations and averments contained in this Complaint, and which are incorporated herein.

87. Now, Sazerac risks immediate threat of irreparable harm by Defendant through his continued unauthorized sale, distribution, and marketing of Sazerac-branded products and experiences, when Defendant plainly has no right to do so.

**WHEREFORE**, based on all the foregoing claims, Sazerac respectfully requests the following relief against Defendant:

A. Judgment against Defendant on all claims stated herein;

B. Compensatory damages against Defendant in an amount to be proven at trial, including but not limited to special and consequential damages;

C. An Order temporarily, preliminarily, and permanently enjoining and restraining Defendant, and those acting in concert or participation with Defendant, from the further promotion, sale, distribution, or marketing of Sazerac-branded products and experiences;

D.      A declaration of rights on Count VIII that Defendant, and those acting in concert or participation with Defendant, have no right to promote, sell, distribute, or otherwise market Sazerac-branded products and experiences;

E.      An Order that Defendant must immediately take down the Social Media Accounts and any other social media accounts created and used for the same or similar purpose;

F.      Punitive damages against Defendant in an amount to be determined at trial;

G.      Pre- and post-judgment interest on the foregoing amounts at the maximum rate allowed by law;

H.      Sazerac's costs, taxes, and reasonable attorneys' fees; and

I.      Any such other and further relief as the Court deems just and proper under the circumstances.

Dated this 16th day of July, 2025.

Respectfully submitted,


  /s/ Andrew T. Hagerman
Christopher E. Schaefer
Andrew T. Hagerman
STOLL KEENON OGDEN PLLC
400 West Market Street, Suite 2700
Louisville, KY 40202
Tel:    (502) 333-6000
christopher.schaefer@skofirm.com
andrew.hagerman@skofirm.com
*Counsel for Sazerac Brands, LLC*

4907-7930-7347.1

16

4898-6252-3475\1